[No. 4554–1. Division One. August 1, 1977.]

MARGARET COUGHLIN, *Appellant,* v. THE CITY OF
SEATTLE, ET AL, *Respondents.*

*Margaret Coughlin,* pro se.

*John P. Harris, Corporation Counsel, Richard E. Mann,
Assistant,* and *Albert Hanan,* for respondents.

FARRIS, C.J.—Margaret Coughlin commenced this action
in Superior Court by writ of certiorari to challenge the
granting of Lockview Rest Home's application for a zoning
code variance by the Seattle Board of Adjustment. She
argues that the effect of the action is to expand an existing
nonconforming use, an allegedly illegal result, and that the
decision to grant the variance was arbitrary and capricious.

On March 1, 1973, the area in which Lockview Rest Home is located was rezoned from RD 5000 (duplex residence, high density) to RS 5000 (single–family residence, high density). At that time, Lockview's 42 patients exceeded the 20–patient limitation on a nursing home in a RS 5000 zone. Lockview therefore became a nonconforming use. The dispute regarding its status prior to that date (Coughlin contends a conditional use while Lockview and the City contend conforming use) is not pertinent to this appeal.

In 1974, Lockview received notice from the Department of Social and Health Services that its dining and recreational facilities were deficient in area under state and federal regulations and its continued participation in state programs was threatened by failure to comply. Thereafter, Lockview filed a variance application wherein it sought to (1) rebuild a breezeway and enclose an existing cabana to provide the required dining and recreational facilities, and (2) construct two additional wards (440 total square feet and five beds).

A city hearing examiner granted the first request but denied the second on the theory that it would be a prohibited expansion of a nonconforming use. Lockview appealed to the Board of Adjustment which granted both requests. The appeal questions the granting of the second request. No objections are raised to the first.

The Board of Adjustment made certain factual findings, including:

> Building Department clarification of permits (#461846 and #479128) issued for the facility indicates a capacity of 42 patients plus 5 staff for a total occupancy of 47.

Finding of fact No. 1.

> Applicant submits that under current operations there is no staff in residence and that instead shift workers are utilized.

Finding of fact No. 2.

> It is believed that the provision of 5 new patient beds as proposed by the applicant would not constitute an

expansion of the non–conforming use but rather a reapportionment of existing total authorized occupancy. Considering the large site, its physical separation from surrounding properties and the unobtrusive and minor nature of the proposed addition, the strict application of the Ordinance, as it relates to the approximately 440 sq. ft. for the new wards, would result in undue and unnecessary hardship.

Findings of conclusion No. 1. The Board concluded in granting the variance that the bed allocation was not *increased* but merely *changed* from staff to patients.

In *Lewis v. Medina,* 13 Wn. App. 501, 535 P.2d 150 (1975), *aff'd,* 87 Wn.2d 19, 548 P.2d 1093 (1976), we held that a court reviewing a variance proceeding

must limit its inquiry to a determination of whether the board's "conclusions may be said to be, *as a matter of law,* arbitrary, capricious, or contrary to law." *Reiger v. Seattle,* 57 Wn.2d 651, 653, 359 P.2d 151 (1961); *Helland v. King County Civil Serv. Comm'n,* 84 Wn.2d 858, 529 P.2d 1058 (1975).

A finding

can be held to be "arbitrary or capricious" if there is no support for it in the record and it is therefore a "willful and unreasoning action, in disregard of facts and circumstances." *Northern Pac. Transp. Co. v. State Util. & Transp. Comm'n,* 69 Wn.2d 472, 479, 418 P.2d 735 (1966).

*Stempel v. Department of Water Resources,* 82 Wn. 2d 109, 114, 508 P.2d 166 (1973).

A conclusion is contrary to law when the application of valid factual findings results in a holding inconsistent with a proper construction of the governing law.

A board of adjustment is only permitted to grant a variance from a zoning ordinance within the guidelines set forth in that zoning ordinance. *Thomson Methodist Church v. Zoning Board of Review,* 99 R.I. 675, 210 A.2d 138, 141 (1965).

*L.M. Pike & Son, Inc. v. Waterford,* 130 Vt. 432, 434, 296 A.2d 262 (1972). *See Reichard v. Zoning Bd. of Appeals,* 8 Ill. App. 3d 374, 290 N.E.2d 349 (1972); *Jacobs v.*

*Philadelphia Zoning Bd. of Adjustment,* 1 Pa. Commw. 197, 273 A.2d 746 (1971); . . .

*Lewis v. Medina, supra* at 504–05.

Section 26.54.030 of City of Seattle comprehensive zoning ordinance No. 86300 states the general rule concerning modification of nonconforming buildings. In pertinent part, it provides:

(a) In specific cases the hearing examiner or the *board* upon appeal may authorize *variances* from the provisions or requirements of this title which will not be contrary to the public interest; but only where, owing to special conditions pertaining to a specific piece of property, the literal interpretation and strict application of the provisions or requirements of this title would cause undue and unnecessary hardship. No *variance* shall be granted to permit the establishment of a *use* otherwise prohibited in the *zone* in which the property concerned is located, and applications for such *variance* shall not be accepted for filing. No *variance* from the provisions or requirements of this title shall be authorized by the hearing examiner or the *board* on appeal unless all of the following facts and conditions are found to exist:

. . .

(b) In authorizing a *variance,* the hearing examiner or *board* may attach thereto such conditions regarding the location, character and other features of a proposed *structure* or *use* as may be deemed necessary to carry out the spirit and purposes of this title and in the public interest. A *variance* so authorized shall become void after the expiration of one year, . . .

The following facts and conditions must be found to exist before a variance may be granted:

(1) because of unique conditions applicable to the subject property, including size, shape, topography, location or surroundings, which were not created by the owner or applicant, the strict application of this title will deprive the property of rights and privileges enjoyed by other properties in the same *zone* or vicinity; and

(2) the contemplated grant of *variance* does not go beyond the minimum necessary to afford relief, and does not constitute a grant of special privilege inconsistent

with the limitations upon other properties in the vicinity and *zone* in which the subject property is situated; and

(3) the granting of the *variance* will not be materially detrimental to the public welfare or injurious to the property or improvements in the *zone* or vicinity in which the subject property is located; and

(4) the authorization of such *variance* will not adversely affect the comprehensive plan of Seattle.

Section 26.54.030, in part.

Careful review of the record convinces us that the trial court's conclusion that the Board's action was neither arbitrary nor capricious is correct. Coughlin maintains, however, that it is contrary to law. She argues that (1) section 26.10.030 does not control section 26.10.060 and (2) even if it did, that portion of section 26.54.030(a) which forbids the granting of a variance "to permit the establishment of a *use* otherwise prohibited" forecloses the granting of the variance. We disagree.

 Section 26.54.030 specifically authorizes the granting of a variance "from the provisions or requirements of this title . . . " No exception is provided for the provisions or requirements of section 26.10.050. Courts cannot read into a statute words which are not there. *See In re Estate of Baker,* 49 Wn.2d 609, 304 P.2d 1051 (1956).

 The variance does not establish a use otherwise prohibited; the nonconforming use status has been in existence since 1973. The Board's authorization of the variance, based upon its factual findings which find support in the record, is consistent with a proper construction of the governing law.

Affirmed.

SWANSON and ANDERSEN, JJ., concur.

Petition for rehearing denied October 25, 1977.

Review denied by Supreme Court February 3, 1978.