# IN THE MATTER OF THE PETITION FOR DISBARMENT OF: DEAN PLASKETT, ESQUIRE AS A MEMBER OF THE VIRGIN ISLANDS BAR ASSOCIATION

S. Ct. Civil No. 2012-0006

Supreme Court of the Virgin Islands

March 13, 2012

442

DIANE M. RUSSELL, ESQ., St. Croix, USVI, *Attorney for Petitioner Sub-committee of the V.I. Bar Ass'n Ethics & Grievance Committee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(March 13, 2012)

PER CURIAM. This matter comes before the Court on a January 5, 2012 petition filed by the St. Croix Subcommittee of the Ethics and Grievance Committee of the Virgin Islands Bar Association ("Committee"), which alleges that Dean C. Plaskett, Esq., has violated several provisions of the Model Rules of Professional Conduct, and recommends that this Court disbar Plaskett as a sanction. For the reasons which follow, we grant the petition.

## I. BACKGROUND

The petition in this case arose out of a December 10, 2008 Judgment entered by the District Court of the Virgin Islands, which adjudicated Plaskett guilty of bribery in violation of 18 U.S.C. § 666(a)(1)(B) and two counts of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2), and sentenced Plaskett to 108 months incarceration, three years of supervised release, and directed him to pay $1,086,237. With respect to the bribery conviction, Plaskett, while serving the Commissioner of the Virgin

Islands Department of Planning and Natural Resources, participated "in an elaborate bribery and kickback scheme with other government officials and complicit business owners," in which "the members of the scheme used fictitious and real companies to obtain government contracts worth more than $1.4 million and progress payments of more than $1 million, despite little or no contract performance." *United States v. Plaskett*, 355 Fed. Appx. 639, 641 (3d Cir. 2009). The two obstruction of justice convictions arose from Plaskett's efforts, after becoming aware of an investigation into one of these contracts, to aid and abet the backdating of documents to give the appearance that they were created in connection with a different contract. *United States v. Plaskett*, 50 V.I. 548, 557 (D.V.I. 2008).

On June 19, 2009, this Court, upon receiving a certified copy of the Judgment of the conviction and noting that the offenses constituted serious crimes within the meaning of Supreme Court Rule 203(b),[1] ordered Plaskett's interim suspension from the Virgin Islands Bar, *see* V.I.S.CT.R. 203(b)(1), and referred the matter to the Committee for a final adjudication, which would occur at the close of all appeals from the convictions. *See* V.I.S.CT.R. 203(b)(4). On December 9, 2009, the United States Court of Appeals for the Third Circuit issued its decision affirming Plaskett's convictions, and on June 7, 2010 the United States Supreme Court denied his petition for writ of certiorari. *See Plaskett v. United States*, 130 S. Ct. 3398, 177 L. Ed. 2d 305 (2010). However, shortly thereafter Plaskett filed a *pro se* petition for writ of habeas corpus with the District Court on July 29, 2010. Notwithstanding the pendency of the habeas corpus petition, the case investigator[2] assigned to the matter sent Plaskett a letter notifying him that, because his convictions had been

---

[1] "The term 'serious crime' shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime in the jurisdiction where the judgment was entered, involves false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a serious crime." V.I.S.CT.R. 203(b)(2).

[2] Effective July 1, 2011, Supreme Court Rules 203 and 207 were amended to eliminate the case investigator position and to have Disciplinary Counsel investigate and prosecute all matters before the Committee. However, pursuant to the amended Supreme Court Rule 207.1.2(c), a case investigator already appointed to investigate or prosecute an open case could, with the permission of Disciplinary Counsel and the Chair of the Committee, continue to perform those duties with respect to that case. *See* V.I.S.CT.R. 207.1.2(c)(5)(i).

affirmed, the adjudicatory panel assigned to the matter would only determine "the extent of the final discipline to be imposed as a result of the conduct resulting in the conviction," V.I.S.CT.R. 203(b)(4), and requested a response by July 25, 2011. Shortly thereafter, Plaskett filed a "Motion in Opposition to Motion for Disbarment," which did not argue for or against any particular sanction, but instead contended that the disciplinary proceedings were premature because of his pending habeas corpus petition.

The adjudicatory panel conferenced the matter without a formal hearing on November 9, 2011 and November 22, 2011, and on November 30, 2011 issued a memorandum of decision rejecting Plaskett's argument that his habeas corpus petition constituted an "appeal" that would automatically stay the disciplinary proceeding pursuant to Supreme Court Rule 203(b)(4). In addition, the panel concluded "that disbarment is the only appropriate penalty for Dean Plaskett's conduct" and, accordingly, "ma[de] its recommendation of disbarment summarily pursuant to Rule 207.3.1(b)." Consequently, the Chair of the Committee filed the instant petition for disbarment, along with a copy of the memorandum of decision, on January 5, 2012. Shortly after the petition was filed, the District Court, in a January 19, 2012 Opinion, denied Plaskett's petition for writ of habeas corpus.

In a January 24, 2012 Order, this Court directed Plaskett to, on or before February 24, 2012, file a response to the petition. However, on February 10, 2012, this Court received notice that the January 24, 2012 Order had been delivered to the Federal Correctional Institution in which Plaskett is presently incarcerated, but that Plaskett refused delivery of the document. Although this Court, in an abundance of caution, also served a copy of the January 24, 2012 Order on the attorney who represented Plaskett during the underlying criminal proceedings, to date no response to the January 24, 2012 Order has been filed by or on behalf of Plaskett.

## II. DISCUSSION

### A. Jurisdiction and Legal Standard

This Court possesses exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit. 4, § 32(e). As we have previously explained,

> The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an order from this Court to

disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually *de novo*, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted).

■■ Ordinarily, when a respondent attorney fails to participate in disciplinary proceedings that have been instituted against him — whether before the Committee or before this Court — we deem the attorney to have admitted all of the underlying factual allegations, and limit our review to determining whether those facts establish a violation of the pertinent ethical rules and whether the recommended sanction is appropriate. *See In re Drew*, S.Ct. BA No. 2007-0013, 2008 V.I. Supreme LEXIS 26, at *10 (V.I. June 30, 2008) (unpublished); *Brusch*, 49 V.I. at 417. In this case, however, the Committee lacked authority to review the underlying facts that led to Plaskett's convictions, and was permitted only to submit a recommendation with respect to the final discipline imposed for that conduct. V.I.S.CT.R. 203(b)(4). Thus, although Plaskett has failed to respond to the Committee's petition, this Court shall still independently review the panel's recommendation to disbar him.

## B. Impact of Pending Habeas Corpus Petition

We recognize, since Plaskett refused delivery of our January 24, 2012 Order and has otherwise not participated in the proceedings before this Court, that he has waived his argument that the Committee should have stayed its proceedings pending the District Court's disposition of his habeas corpus petition. Nevertheless, as the adjudicatory panel recognized in its November 30, 2011 decision, the meaning of the phrase

"all appeals from the convictions" in Supreme Court Rule 203(b)(4) represents an issue of first impression, and surprisingly few other jurisdictions have addressed the question of whether a pending habeas corpus petition should stay disciplinary proceedings that were initiated as a result of the underlying convictions. Thus, given the novelty of the question, and because we have reviewed the "Motion in Opposition to Motion for Disbarment" Plaskett submitted to the panel, we exercise our discretion — notwithstanding Plaskett's waiver — to address this issue on the merits in order to provide the Committee with guidance going forward.

■ Generally, when a court in the Virgin Islands promulgates a local rule that contains identical language to a rule adopted by a court in another jurisdiction, the Virgin Islands court may interpret the rule the same way as the other jurisdiction. *See Gov't of the V.I. v. Mills*, 634 F.3d 746, 750, 54 V.I. 972 (3d Cir. 2011). The pertinent phrase in Supreme Court Rule 203(b)(4) was derived from the former Superior Court Rule 303(b)(4)[3]; however, this Court — like the adjudicatory panel — has not found any other jurisdiction with a court rule that contains identical language. In the absence of any guidance from another jurisdiction, "we apply the rules of statutory construction and look at the language of the rule . . . to determine its meaning," which entails "giv[ing] words their plain, ordinary and commonly understood meaning and constru[ing] the . . . rule as a whole." *State v. Ebertz*, 2010 ND 79, 782 N.W.2d 350, 352-53 (N.D. 2010); *see also In re Commitment of Sorenson*, 2000 WI 43, 234 Wis. 2d 648, 611 N.W.2d 240, 247 (Wis. 2000); *People v. Holtzman*, 234 Mich. App. 166, 593 N.W.2d 617, 622 (Mich. Ct. App. 1999); *Detwiler v. Gall, Landau & Young Const. Co.*, 42 Wn. App. 567, 712 P.2d 316, 317 n.2 (Wash. Ct. App. 1986). *Accord Corraspe v. People*, 53 V.I. 470, 480 (V.I. 2010) (principles of statutory construction apply when construing and applying court rules).

---

[3] After 1991, but prior to establishment of the Supreme Court in 2007, the Superior Court, as the highest non-federal local court of the Virgin Islands, governed all matters related to the Virgin Islands Bar. *See Application of Moorhead*, 27 V.I. 74, 93 (V.I. Super. Ct. 1992). This Court assumed jurisdiction over bar governance matters in 2007, *see Application of Coggin*, 49 V.I. 432, 436 (V.I. 2008), and when it promulgated its bar governance rules shortly thereafter, "the language of the former Superior Court Rules has been adopted, virtually verbatim, as part of the new Supreme Court Rules." *Brusch*, 49 V.I. at 412 n.2.

██ The term "appeal" is defined as "[a] proceeding undertaken to have a decision reconsidered by a higher authority; esp[ecially], the submission of a lower court's or agency's decision to a higher court for review and possible reversal." *City of East Providence v. United Steelworkers of Am., Local 15509*, 925 A.2d 246, 252 (R.I. 2007) (quoting the definition now found in BLACK'S LAW DICTIONARY 102 (9th ed. 2009)). But a petition for writ of habeas corpus, by definition, does not request that a higher court directly review a decision; rather, "[h]abeas corpus, in the context of a challenge to a final felony conviction, is a collateral attack on the judgment," which is " '[a]n attack on a judgment entered in a different proceeding.' " *Ex parte Carmona*, 185 S.W.3d 492, 496 (Tex. Crim. App. 2006) (quoting BLACK'S LAW DICTIONARY 208 (Abridged 7th ed. 2000)). *See also In re Frantz*, 271 Ga. 529, 520 S.E.2d 686, 687 (Ga. 1999) ("[T]he term 'termination of appeal' . . . includes only first level appeals through the United States Supreme Court and does not apply to habeas corpus and similar collateral procedures that are neither continuation of appeals nor second appeals."). In addition, as the adjudicatory panel — relying on an opinion rendered by the West Virginia Supreme Court — correctly observed in its memorandum of decision, extending the definition of "appeal" to include collateral proceedings would lead to absurd results, in that an attorney convicted of a crime could file successive habeas corpus, coram nobis, or other petitions for the sole purpose of indefinitely delaying adjudication of final disciplinary proceedings. *See Committee on Legal Ethics of the W.Va. State Bar v. Moore*, 186 W. Va. 127, 411 S.E.2d 452, 454 n.1 (W.Va. 1991).

██ Here, the only proceedings that satisfy the ordinary definition of "appeal" are Plaskett's direct appeal to the Third Circuit and the certiorari proceedings in the United States Supreme Court, the last of which was terminated on June 7, 2010. Plaskett's habeas corpus petition, while clearly seeking review of his convictions, sought review from the District Court — the same court that entered those convictions — and not from a higher authority. *See Summers v. Schriro*, 481 F.3d 710, 713-14 (9th Cir. 2007) (explaining that seeking reconsideration of criminal conviction from court that entered the judgment, while constituting a "review" of the conviction, is not an "appeal"). Consequently, we agree with the adjudicatory panel that the pendency of the habeas corpus petition in the District Court did not serve to automatically stay the disciplinary proceedings pursuant to Supreme Court Rule 203(b)(4), and thus the case

investigator was not precluded from requesting a response from Plaskett and the adjudicatory panel was not barred from rendering its memorandum of decision.

## C. Appropriate Sanction

■ Since the Third Circuit has affirmed Plaskett's convictions for bribery and obstruction of justice, and the United States Supreme Court has denied certiorari, this Court — like the adjudicatory panel — assumes that Plaskett is guilty of these offenses, and must only determine the appropriate sanction. *See* V.I.S.Ct.R. 203(b)(4). To determine the appropriate sanction, this Court "consider[s] the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420; *see also* AMERICAN BAR ASS'N, STANDARDS FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 3.0 (1986 as amended 1992)). "The Court considers the first three factors to initially determine the appropriate sanction," and only "consider[s] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Brusch*, 49 V.I. at 420. Furthermore, in crafting the appropriate sanction, this Court is "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Id.* at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1).

■ We agree with the panel's recommended sanction of disbarment. As the panel correctly noted in its memorandum of decision, "commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, decent, or misrepresentation" represent one of the most serious breaches of a duty a lawyer owes to the public. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 5.1. In addition, the facts, as summarized by the District Court and the Third Circuit, clearly reflect that Plaskett willfully and intentionally committed these offenses, and that they resulted in actual injury to the public through the loss of significant public funds. Under these circumstances, disbarment represents an appropriate baseline sanction. *See* STD'S FOR

IMPOSING LAWYER SANCTIONS § III.C., Std. 5.11(a) (disbarment appropriate for "serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft . . . or an attempt or conspiracy or solicitation of another to commit any of these offenses). Finally, Plaskett failed to bring any mitigating factors to the panel's attention[4] — even though he had an opportunity to do so — and his dishonest or selfish motive, pattern of misconduct, substantial experience in the practice of law, and illegal conduct all serve as aggravating factors. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 9.1. Therefore, we agree with the panel's conclusion that disbarment represents the appropriate sanction.

## III. CONCLUSION

For the foregoing reasons, we conclude, in light of the very serious nature of his ethical violations, that Plaskett should be disbarred from the practice of law in the Virgin Islands in order to protect the public and the administration of justice from further professional wrongdoing.

---

[4] In its memorandum of decision, the panel observed that Plaskett failed to present any mitigating circumstances, but noted, *sua sponte*, that Plaskett's absence of a prior disciplinary record and the imposition of other penalties or sanctions in his criminal case may serve as mitigating factors. However, given that the baseline sanction is disbarment and the presence of several aggravating factors, we agree with the panel that even if these mitigating factors are present, they cannot justify a lesser sanction than disbarment.